ERWIN & McKELSEY v. TOWN OF RICHMOND.

*Town Liquor Agent. Selectmen. Purchase of Liquors. Agency.*

R. had been the duly appointed liquor agent of the defendant town for several successive years, and soon after his appointment each year, except the last one, had been authorized by the selectmen to purchase the liquors for the town, but such authorization did not extend in any instance beyond the ensuing official year of the agent. *Held*, that a purchase made on the day of his last appointment and before the selectmen knew of his appointment, but without authority, though made expecting the selectmen would give him the same authority as before, was not binding upon the town under the circumstances of the case.

BOOK ACCOUNT. The court at the April term, 1869, PIERPONT, C. J., presiding, *pro forma*, gave judgment for the plaintiffs on the auditor's report, to which the defendant excepted.

The following is the auditor's report:

" The plaintiffs are liquor dealers in New York City. For several years before they had any dealings with the defendant, they had agents in this state, who were in the habit of soliciting orders on the plaintiffs for liquors for town liquor agents. That for something over two years past, one Charles J. Lane, of Burlington, Vermont, has been their agent for this purpose in Chittenden county, and that all the orders that the plaintiffs have had from the town of Richmond have come through this agent in each of the years 1864, 1865, 1866, and 1867 ; that about the first Monday of May, Dr. William Root was, by the county commissioner for Chittenden county, appointed agent for selling liquors in said Richmond ; that soon after his appointment in each of those years, the selectmen agreed with him as to his yearly compensation, which was $100 each year. Soon after his appointment in 1864, 1865 and 1866, the selectmen authorized him to purchase for the town such liquors as were needed through the year. No further authority of the kind was ever after given to Dr. Root, and I find that he and the selectmen understood alike,

that no one of the authorizations extended beyond the official year for which he was on each occasion just appointed. Dr. Root, as agent, furnished the selectmen of Richmond a report of the trans-actions of the agency, before the March meetings in 1865 and 1866, but not for the March meeting of 1867, then stating to the selectmen that he should not be agent for another year, and would render and settle his account the first of May following, which to the selectmen seemed satisfactory. The selectmen had no expec-tations that he would take the appointment again. But before the first of May, 1867, they had determined not to have liquors any longer purchased by the agent, but to purchase themselves. This res-olution, however, was not communicated to Dr. Root, who, without asking for the appointment, or wishing it, was by the county com-missioner again appointed agent on the 7th or 8th day of May, 1867. This appointment was not made known to the selectmen by the commissioner or Dr. Root, but they learned of it by com-mon report sometime previous to the 12th or 15th of that month. On the 31st day of March, 1866, Dr. Root gave his first order to the plaintiffs, through C. J. Lane, their agent for liquors. On that occasion he informed said Lane that he was authorized by the selectmen to purchase for the town. Nothing further was ever said by Dr. Root to said Lane about his authority, nor was ever any thing said on that subject between the selectmen of Richmond, or any of them, and said Lane, till after the 18th day of May, 1867. Dr. Root gave another order, July 26th, and another December 13, 1866; one February 13th, one March 22d, and another May 6, 1867. This last was for the liquors now in question. On the 6th day of May, 1867, the county commissioner was at Richmond for the purpose of seeing whom to appoint agent for that town. In the afternoon of that day, C. J. Lane, the plaintiffs' agent, was there present when the commissioner was; Andrew J. Crane, who was an applicant for appointment as agent, was also present; but no one of the selectmen of the town was there that day. That same afternoon, Mr. Lane, the plaintiffs' agent, solicited Crane to give him an order for liquors for the town, conditional upon his being appointed. To this Mr. Crane replied that he could not; that the selectmen were going to purchase the liquors for the town that year themselves. Crane had previously learned this fact from the selectmen, but did not tell Lane how he knew it. Mr. Lane then had an interview with Dr. Root, and solicited an order for liquors for the town from him, conditional on his being appointed, and Dr. Root then gave a conditional or-der for the same liquors charged in the plaintiffs' account, on which they seek to recover. C. J. Lane heard from the county

commissioner that he had appointed Dr. Root liquor agent for Richmond, on the evening of May 6, 1867, and thereupon, on the 9th day of May, 1867, by letter to the plaintiffs, ordered the liquors corresponding with Dr. Root's conditional order, to be forwarded for the town of Richmond, directed to said Root, agent, Richmond, Vt. The plaintiffs thereupon, in good faith, and supposing the town of Richmond would be holden to pay therefor, filled the order, sent the packages to the depot in New York on the 16th day of May, took the customary receipt from the company, dated 17th May, and then on the same day forwarded a bill of the goods to Dr. Root, agent at Richmond, which he received by due course of mail. On the 18th day of May, 1867, the selectmen of Richmond met at Dr. Root's, and informed him that they should themselves purchase liquors for the agency that year, and that he must not. Dr. Root expressed his satisfaction with this determination, but said to the selectmen that he had already, since his appointment, given an order to the plaintiffs for liquors. The selectmen told him that he had no authority to give such an order until or unless they first directed it, and that they would not take the liquors so ordered. Dr. Root admitted that he had no right to give the order, but said he acted in good faith, supposing the selectmen would approve of it. And I find that he did suppose that his order would be ratified by the selectmen, and to that extent acted in good faith. On being notified by the selectmen that they would not receive the liquors he had ordered, Dr. Root the same day wrote a letter to C. J. Lane, the plaintiffs' agent, to that effect, and countermanding the order. Mr. Lane's reply to it was, in substance, that the liquors ordered had been shipped, and were then in transit for Richmond, and could not be stopped. The contents of this letter were communicated to the selectmen by Root, at some time before the liquors arrived. The liquors arrived at Richmond June 10th, 1867, were refused by the selectmen of Richmond, and have since been kept in store by the Vermont Central Railroad. Dr. Root resigned his agency, and A. J. Crane was appointed agent in his place, July 3d, 1867. Up to this time, all payments for goods ordered by him had been made by him from monies in his hand as agent. The selectmen admitted the town's obligation to pay for liquors ordered by Dr. Root previous to the first Monday of May, 1867, and on the 31st of August, and 23d day of September, 1867, paid the plaintiffs for all liquors thus ordered. The selectmen of Richmond had no notice till the 18th of May, 1867, that Dr. Root had given an order for liquors on the 6th of May, or at any subsequent day, except what they derived from out-door reports. The liquors ordered

by Dr. Root May 6th, 1867, were not needed for sale prior to his going out of office, July 3d, 1867, but these, or similar ones, would have been wanted in the course of the next two or three months."

The amount found due the plaintiffs, upon these facts, if any thing was legally due, was $668.85.

*E. R. Hard, R. H. Start* and *E. J. Phelps*, for the defendants.

—— ——, for the plaintiffs.

The opinion of the court was delivered by

WILSON, J. The appointment, by the commissioner, of Dr. Root as agent for the sale of liquor, did not confer on him any power to charge the town, nor was he authorized by statute to charge the town in making purchases. By the act of 1863, it was the duty of the selectmen of Richmond to furnish Dr. Root as agent, at the expense of the town, such liquors as he was authorized to sell, and to fix the price at which he should sell them. The case states, among other things, that about the first Monday in May in each of the years 1864, 1865 and 1866, Dr. Root was, by the commissioner, appointed agent for selling liquors in the defendant town ; that soon after his appointment in each of those years, the selectmen of that town directed Dr. Root to purchase for the town such liquors as were needed through that year, but it was understood by and between Root and the selectmen that no one of those directions or authorizations should extend, and the auditor finds that no one of them did extend, beyond the official year for which he was on each occasion just appointed. It appears that Dr. Root, acting as clerk or servant of the selectmen, but not as their general agent, made several purchases of liquors, which purchases were ratified by the selectmen. The authority of Dr. Root to sell liquor expired on the first day of May in each of these years. Before the first day of May, 1867, the selectmen had determined not to have liquors any longer purchased by or through the agent, but to purchase the liquors for the town that year themselves. Previous to the appointment of Dr. Root in May, 1867,

and on the 6th day of said month, Root, at the solicitation of C. J. Lane, the plaintiffs' agent, gave the plaintiffs' said agent a conditional order for the liquors charged in the plaintiffs' account, which order, it was understood between Root and the plaintiffs' agent, should not be filled unless Root received the appointment as agent to sell liquors for the defendant town. Dr. Root was, on the 7th or 8th of May, 1867, by the commissioner appointed liquor agent for that town, and thereupon, on the 9th day of that month, the plaintiffs' agent forwarded to the plaintiffs the order for the liquors. It appears that the selectmen had no expectation that Dr. Root would obtain, or consent to take, the appointment so tendered to him ; they had no knowledge until after the 8th of May of said appointment, nor that he had ordered the liquors in question, and when informed of the purchase by Root they refused to ratify it. It is clear from the findings of the auditor that Dr. Root, after the 1st day of May, 1867, was not the actual or ostensible servant or agent of the defendants or their selectmen, and he had no authority whatever to make the purchase in question. The plaintiffs, under the circumstances, had no right to infer from their previous dealings with Root, a continuance of his alleged agency the preceding official years. But the case does not rest wholly upon the facts above stated. On the 6th of May, 1867, before the giving of the order by Root for the liquors, Andrew J. Crane, an inhabitant of said Richmond, informed the plaintiffs' agent, Lane, that the selectmen of the defendant town were going to purchase the liquors for the town that year themselves. This was sufficient to put the plaintiffs on inquiry as to Root's authority to give such order, and we think the plaintiffs had no right to expect the town would be liable unless the act of Root in making the purchase was ratified by the selectmen, which they refused to do. The purchase of the bill of liquors in suit not having been ratified by the selectmen, there is no occasion to consider whether they had power to ratify a purchase made by Root so as to bind the town. We must assume that the plaintiffs and their agent were fully aware that the statute, which authorized Root to sell liquors, did not authorize him to purchase them. We are agreed that upon the facts of this case the plaintiffs are not entitled to recover ; and

in view of the presumption that the plaintiffs made the sale with knowledge of our laws upon the subject, and of the actual notice to them that Root could not bind the town for that or any other purchase, they have no reason to complain of the result.

The judgment of the county court is reversed, and judgment for the defendants to recover their costs.